# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ANDOVER HEALTHCARE, INC.,
a Massachusetts corporation,

                Plaintiff,

     v.

JOHNSON & JOHNSON CONSUMER, INC.,
a New Jersey corporation,

              Defendant.

Civil Action No.  17-cv-10620-LTS

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## JOHNSON & JOHNSON CONSUMER, INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND .............................................................................................................2

    A.    Parties and Products..............................................................................2

    B.    Andover's Threadbare Complaint............................................................3

        1.    Falsity...............................................................................4

        2.    Injury................................................................................4

        3.    JJCI's Sale of the Products Nationwide.......................................5

ARGUMENT ..................................................................................................................6

I.    ANDOVER FAILS TO PLAUSIBLY ALLEGE A CLAIM FOR RELIEF......................6

    A.    Andover's Complaint Fails Rule 8 ...........................................................7

        1.    Complaint is Devoid of Factual Content ......................................7

        2.    Andover Merely Recites its Causes of Action................................8

        3.    Andover's Deficient Complaint Undermines Rule 8's Purposes ...............9

    B.    Andover's Complaint Falls Well Short of Rule 9(b) ............................10

II.    ANDOVER'S STATE LAW CLAIMS FAIL TO SATISFY THE "PRIMARILY AND SUBSTANTIALLY" REQUIREMENT ........................................11

CONCLUSION..............................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................... *passim*

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................6, 7

*Bern Unlimited, Inc. v. Burton Corp.*,
    95 F. Supp. 3d 184 (D. Mass. 2015) .......................................................8

*Bliss Valley Props., LLC v. Eliopulos*,
    2005 Mass. Super. LEXIS 291 (Mass. Super. Ct. June 2, 2005) ............12

*Chapdelaine Corp. Sec. & Co. v. Depository Tr. & Clearing Corp.*,
    No. 05-cv-10711 (SAS), 2006 U.S. Dist. LEXIS 49273 (S.D.N.Y. July 13, 2006) ................8

*In re Curran*,
    855 F.3d 19 (1st Cir. 2017) .....................................................................6

*Diomed, Inc. v. Vascular Sols., Inc.*,
    417 F. Supp. 2d 137 (D. Mass. 2006) ...................................................12

*DM Research, Inc. v. College of Am. Pathologists*,
    170 F.3d 53 (1st Cir. 1999) .....................................................................9

*Fishman Transducers, Inc. v. Paul*,
    684 F.3d 187 (1st Cir. 2012) .................................................................13

*Gillette Co. v. Norelco Consumer Prods. Co.*,
    69 F. Supp. 2d 246 (D. Mass. 1999) .......................................................8

*Giragosian v. Ryan*,
    547 F.3d 59 (1st Cir. 2008) .....................................................................3

*Grajales v. P.R. Ports Auth.*,
    682 F.3d 40 (1st Cir. 2012) .....................................................................9

*Hallal v. Vicis Capital Master Fund LTD*,
    No. 12-cv-10166 (NMG), 2013 U.S. Dist. LEXIS 39449 (D. Mass. Feb. 25, 2013) ............6, 9

*Hayduk v. Lanna*,
    775 F.2d 441 (1st Cir. 1985) ...................................................................6

*Martin v. Mead Johnson Nutrition Co.*,
    No. 09-cv-11609 (NMG), 2010 U.S. Dist. LEXIS 104923 (D. Mass. Sept. 30, 2010) .......6, 10

*McGrath & Co., LLC v. PCM Consulting, Inc.*,
    No. 11-cv-10930 (DJC), 2012 U.S. Dist. LEXIS 18584 (D. Mass. Feb. 15, 2012) .................6

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*,
    567 F.3d 8 (1st Cir. 2009) ...........................................................................................................6

*Nisselson v. Lernout*,
    469 F.3d 143 (1st Cir. 2006) ...................................................................................................12

*Pickler Int'l v. Leavitt*,
    865 F. Supp. 951 (D. Mass. 1994), *aff'd*, 94 F.3d 640 (1st Cir. 1996) ...................................11

*Ruggers, Inc. v. United States*,
    736 F. Supp. 2d 336 (D. Mass. 2010) .....................................................................................10

*Sarah's Hat Boxes, L.L.C. v. Patch Me Up, L.L.C.*,
    No. 12-cv-399 (PB), 2013 U.S. Dist. LEXIS 52976 (D.N.H. Apr. 12, 2013) ..........................8

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012) ..................................................................................................9, 13

*Spring Investor Servs., Inc. v. Carrington Capital Mgmt., LLC*,
    No. 10-cv-10166 (FDS), 2013 U.S. Dist. LEXIS 45719 (D. Mass. Apr. 18, 2013) ...............13

*Lawton, ex rel. United States v. Takeda Pharm. Co.*,
    842 F.3d 125 (1st Cir. 2016) ...................................................................................................10

*Vass v. Blue Diamond Growers*,
    No. 14-cv-13610 (IT), 2015 U.S. Dist. LEXIS 175317 (D. Mass. Aug. 11, 2015) ................11

*Wajda v. R.J. Reynolds Tobacco Co.*,
    103 F. Supp. 2d 29 (D. Mass. 2000) .......................................................................................11

*Watterson v. Page*,
    987 F.2d 1 (1st Cir. 1993) ..........................................................................................................2

**Statutes**

Lanham Act ........................................................................................................... *passim*

Mass. Gen. Laws ch. 93A ...................................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 8 .......................................................................... *passim*

Federal Rule of Civil Procedure 9(b)..................................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) .............................................................................3, 6, 12

Defendant Johnson & Johnson Consumer, Inc. ("JJCI") submits this memorandum of law in support of its motion to dismiss the Complaint of Plaintiff Andover Healthcare, Inc. ("Andover").

## PRELIMINARY STATEMENT

JJCI is a leading provider of consumer healthcare products in the United States, including Band-Aid® and Coach® brand cohesive wrap bandages. Andover, a Massachusetts company that also sells cohesive wrap bandages, alleges that three products sold by JJCI are falsely labeled as "not made with natural rubber latex" in violation of the Lanham Act and Massachusetts law. Andover, however, does not allege *any* specific facts in its Complaint that support its baseless claims. The Complaint must be dismissed for this reason alone.

Andover's threadbare allegations do not satisfy the minimal pleading requirements of Federal Rule of Civil Procedure 8, let alone the heightened requirements of Rule 9(b) applicable to claims that sound in fraud. The Complaint cites no evidence that JJCI's products are made with natural rubber latex. Nor does it cite any testing that shows that JJCI's products contain potential allergens found in natural latex. Indeed, except when extolling the virtues of Andover's own products, the Complaint is entirely conclusory.

The U.S. Supreme Court has held that Rules 8 and 9(b) prevent plaintiffs from "unlock[ing] the doors of discovery" based on complaints that contain "nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Otherwise any plaintiff—whether a competitor or consumer—could simply pick a product off store shelves, file suit, and commence a fishing expedition. Moreover, even if the claims asserted in the Complaint had a basis in fact, JJCI is entitled to know the "who, what, when, where, and how" behind Andover's claims so that it may prepare its defense and determine whether there are other grounds for

dismissal, such as statutes of limitations. Andover cannot gain a tactical advantage, or insulate its claims from judicial review, by pleading no facts at all.

Because it fails to allege sufficient facts to support any claims for relief, the Complaint must be dismissed in its entirety. But Andover's claims under Massachusetts law fail for the additional reason that JJCI's allegedly mislabeled products are not sold "primarily and substantially" in the State of Massachusetts. "No action shall be brought or maintained" under Massachusetts' unfair competition laws unless the disputed conduct occurred "primarily and substantially within the commonwealth." Mass. Gen. Laws ch. 93A, § 11. Yet, as Andover acknowledges in the Complaint, JJCI sells cohesive wraps labeled as "not made with natural rubber latex" throughout the United States. Andover's state-law claims must be dismissed for this reason as well.

## BACKGROUND

### A.  Parties and Products

Andover is a purveyor of "cohesive elastic wraps" that claims to have "invented the healthcare industry's first cohesive elastic wrap containing no natural rubber latex." (Compl. ¶¶ 7, 9.) In fact, Andover is a privately held company with a history of filing legal complaints against other companies that sell cohesive bandages. For example, in 2011, Andover filed a short-lived lawsuit against Tempo Pharmaceuticals based upon boilerplate allegations virtually identical to those asserted against JJCI here.[1]

---

[1] *See* Complaint, *Andover Healthcare v. Tempo Medical Products*, No. 11-cv-10019 (MLW), Dkt. No. 1 (D. Mass.) (filed Jan. 1, 2011) (June 5, 2017 Declaration of Travis J. Tu in Support of Defendant's Motion to Dismiss ("Tu Decl.") Ex. 1). Andover voluntarily dismissed its case against Tempo Pharmaceuticals after the defendant moved to dismiss for lack of jurisdiction. *Id.*, Notice of Voluntary Dismissal, Dkt. No. 25 (filed Mar. 8, 2012). The Court may take judicial notice of earlier judicial filings by Andover, both as public records and because their authenticity cannot be legitimately disputed by Andover. *See Watterson v. Page*, 987 F.2d 1, 3

JJCI markets and sells many well-known brands of consumer healthcare products. Among its product offerings, JJCI sells the three Band-Aid® and Coach® wraps identified by Andover in the Complaint: (1) the Band-Aid® Secure-Flex® Wrap; (2) the Band-Aid® Hurt-Flex® Wrap, and (3) the Coach® Sports Wrap. (Compl. ¶ 13.) JJCI refers to these wraps collectively as the "Products."

Cohesive wraps such as the Products are elastic bandages that do not require clips or other fasteners. (*Id.* ¶ 6.) Historically, cohesive wraps were made with natural rubber latex, which caused allergic reactions in some people. (*Id.* ¶ 8.) Manufacturers, therefore, developed "latex-free" wraps to minimize this risk. (*Id.* ¶ 11.)

In 2014, the U.S. Food and Drug Administration (FDA) published guidance to industry recommending that medical products not be labeled as "latex-free." (*Id.* ¶ 11 & Ex. B, at 4-5.) The FDA recommended that such products instead be labeled as "not made with natural rubber latex."[2] All three of the Products, therefore, bear the statement "not made with natural rubber latex" on their labels. (*Id.* Ex. C.)

**B. Andover's Threadbare Complaint**

Andover filed the instant Complaint against JJCI on April 11, 2017. Before commencing litigation, Andover did not raise its concerns with JJCI, or provide JJCI with any advance notice of its claims.

---

(1st Cir. 1993) (explaining that district courts may consider certain "documents not attached to the complaint" on a motion to dismiss, including "documents the authenticity of which are not disputed by the parties" and "official public records"); *see also Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008) ("A court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss.").

[2] The FDA based its recommendation on various considerations, including that there are both natural and synthetic forms of latex, as well as the fact that some medical products labeled as "latex-free" may, for various reasons, still contain latex allergens. (Compl. Ex. B, at 2-3.)

In its entirety, Andover's paltry Complaint runs seven pages, double-spaced. Pages 1 through 3 contain allegations regarding the "Parties," "Jurisdiction and Venue," and "Background" on cohesive wraps. Pages 6 and 7 contain a "Prayer for Relief" and "Jury Demand." All of Andover's allegations in support of its Lanham Act and state-law claims are set forth on pages 4 and 5 of the Complaint, including Andover's allegations of falsity and injury.

### 1. Falsity

Andover alleges falsity in three paragraphs. According to the Complaint, "[JJCI] sells" the Products. (Compl. ¶ 13.) The Products' packaging "contains the statement, 'not made with natural rubber latex.'" (*Id.* ¶ 14.) But the Products "do in fact contain natural rubber latex." (*Id.* ¶ 15.)

In support of these perfunctory allegations, Andover cites nothing. The Complaint alleges no actual facts or evidence that the Products contain natural rubber latex. Nor does the Complaint cite any testing that suggests that the Products contain latex allergens.[3] Nevertheless, based solely on these three allegations, Andover alleges that JJCI's labeling of the Products is false, that JJCI should be permanently enjoined from selling them, and that Andover is entitled to disgorgement of JJCI's profits, treble damages, and attorneys' fees.

### 2. Injury

Andover's allegations of injury fare no better. The Complaint alleges that Andover and JJCI are "direct competitors," and "thus," Andover "has been injured by [JJCI's] false advertising and promoting." (Compl. ¶ 19.) Based upon this supposed "head-to-head"

---

[3] In FDA guidance to industry, which Andover attached to the Complaint, the FDA identifies three currently-available tests for the detection of latex allergens. (Compl. Ex. B, at 3-4.) Andover notably does not allege that it has conducted any of these tests.

competition, and nothing else, the Complaint summarily concludes that, if the Products were labeled differently, Andover "would have captured [JJCI's] sales." (*Id.* ¶ 21.)

Not only are Andover's allegations of injury supported by no facts, they are also entirely implausible. Numerous companies besides JJCI (*e.g.*, Tempo Pharmaceuticals, 3M, Walgreens, etc.) sell cohesive bandages that are not made with natural rubber latex—a fact that Andover has repeatedly acknowledged in the past. For example, in its 2011 lawsuit against Tempo, Andover alleged that Tempo's "latex-free" cohesive wrap products "are sold in direct competition to Andover's latex-free products."[4] And, in a 2013 patent suit against 3M, Andover asserted that "[t]he market for non-[natural rubber latex] products is a two-supplier market" comprised of "Andover and 3M," not JJCI.[5]

### 3. JJCI's Sale of the Products Nationwide

Although otherwise factually bereft, Andover's Complaint is clear about one thing: JJCI does not market the Products primarily and substantially in Massachusetts. In fact, the Complaint acknowledges, in multiple places, that JJCI sells the Products throughout the United States. (*See* Compl. ¶ 18 (JJCI distributes the "Products throughout the United States in interstate commerce"); *id.* ¶ 25 (JJCI's allegedly "false advertisements and promotions" have taken "place throughout the United States . . .").) And Andover concedes that it competes with JJCI "at retail stores throughout the United States and the world." (*Id.* ¶ 6.)

---

[4] *See* Tu Decl. Ex. 1, ¶ 4.

[5] *See* Andover Healthcare, Inc.'s Brief in Response to 3M Company's Motion to Preclude Arthur Cobb's Testimony Regarding Price Erosion Damages, *Andover Healthcare, Inc. v. 3M Company*, No. 13-cv-843 (LPS), Dkt. No. 256, at 2 (D. Del.) (filed Apr. 7, 2016) (Tu Decl. Ex. 2).

**ARGUMENT**

Dismissal is warranted under Rule 12(b)(6) unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, when "the facts articulated in the complaint are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,'" the case must be dismissed. *In re Curran*, 855 F.3d 19, 25 (1st Cir. 2017) (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)).

## I.     ANDOVER FAILS TO PLAUSIBLY ALLEGE A CLAIM FOR RELIEF

Andover alleges that the Products' labels are false and misleading. Because such allegations "sound in fraud," the Complaint must satisfy the heightened pleading standards of Rule 9(b). *See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009) ("[T]he case law here and in other circuits reads Rule 9(b) expansively to cover associated claims where the core allegations effectively charge fraud."); *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985) (applying Rule 9(b) to negligent misrepresentation claims that sounded in fraud); *Hallal v. Vicis Capital Master Fund LTD*, No. 12-cv-10166 (NMG), 2013 U.S. Dist. LEXIS 39449, at *45 (D. Mass. Feb. 25, 2013) (recognizing that Rule 9(b) applies beyond just "actual fraud claims").

Although some courts in this District have applied Rule 8 to Lanham Act claims, others have applied Rule 9(b) to state-law claims based upon substantially similar allegations. *Compare McGrath & Co., LLC v. PCM Consulting, Inc.*, No. 11-cv-10930 (DJC), 2012 U.S. Dist. LEXIS 18584, at *19 n.1 (D. Mass. Feb. 15, 2012) (applying Rule 8 in Lanham Act case), *with Martin v. Mead Johnson Nutrition Co.*, No. 09-cv-11609 (NMG), 2010 U.S. Dist. LEXIS 104923, *8-*9 (D. Mass. Sept. 30, 2010) (applying Rule 9(b) in Chapter 93A case concerning

alleged false advertising).  These decisions are difficult to reconcile.  But in this case, the Court

need not decide whether Rule 8 or Rule 9(b) applies to all of Andover's claims, or only some of

them.  Andover's Complaint fails under either standard.

### A.      Andover's Complaint Fails Rule 8

To satisfy Rule 8, a complaint must contain sufficient facts to establish a "plausible"

claim for relief.  *Twombly*, 550 U.S. at 570.  Facts that are "merely consistent" with liability are

not enough.  *Id*. at 557.  Rather, a plaintiff must allege sufficient facts "to raise a reasonable

expectation that discovery will reveal evidence" of the claim, and to push the complaint across

"the line between possibility and plausibility."  *Id.* at 556-57.  In other words, a viable complaint

must contain "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  A "sheer possibility"

that "a defendant has acted unlawfully" does not state a claim.  *Id*.

### 1.      Complaint is Devoid of Factual Content

Andover's Complaint does not contain any facts, let alone factual content that would

permit the Court to infer that the Products' labels are actually false, and that Andover has been

injured as a result.  As discussed above, when it comes to falsity, the Complaint cites nothing—

no facts, testing or other evidence—in support of Andover's naked allegation that the Products

"do in fact contain natural rubber latex."  (Compl. ¶ 15.)

Similarly, when it comes to injury, the Complaint summarily alleges that Andover has

been injured because it purportedly competes with JJCI head-to-head.  Andover cites no facts—

no lost customers, lost sales, or tangible harm—to support these conclusory allegations.

Andover's conclusory assertions of "injury" are also belied by the fact that the marketplace for

cohesive wraps includes multiple companies that offer products not made with natural rubber

latex.  *See Iqbal*, 556 U.S. at 679 (court should "draw on its judicial experience and common

sense").  In such circumstances, courts "will not" presume injury, sufficient for purposes of Rule

8, based solely on allegations that "the parties are competitors and the advertisements are false."

*Chapdelaine Corp. Sec. & Co. v. Depository Tr. & Clearing Corp.*, No. 05-cv-10711 (SAS),

2006 U.S. Dist. LEXIS 49273, at *15-16 (S.D.N.Y. July 13, 2006); *see also Bern Unlimited, Inc.

v. Burton Corp.*, 95 F. Supp. 3d 184, 218 (D. Mass. 2015) (recognizing that while injury can at

times be presumed in a "two-competitor" market, "[i]n a market with multiple competitors, [the]

underlying premise is substantially undermined, if not negated altogether").

## 2. Andover Merely Recites its Causes of Action

While the Complaint ticks through each element of Andover's Lanham Act and state-law

claims, it is well-established that "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Threadbare

recitals are all that Andover has proffered.

For example, the elements of a Lanham Act claim are "(1) a false statement of fact by the

defendant in a commercial advertisement about its own or another's product; (2) the statement

actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the

deception is material, in that it is likely to influence the purchasing decision; (4) the defendant

caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely

to be injured as a result of the false statement, either by direct diversion of sales from itself to

defendant or by a lessening of the goodwill associated with its products."  *Sarah's Hat Boxes,

L.L.C. v. Patch Me Up, L.L.C.*, No. 12-cv-399 (PB), 2013 U.S. Dist. LEXIS 52976, at *30-*31

(D.N.H. Apr. 12, 2013) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139

(9th Cir. 1997)); *see also Gillette Co. v. Norelco Consumer Prods. Co.,* 69 F. Supp. 2d 246, 257-

58 (D. Mass. 1999).  Andover's Lanham Act count tracks these elements with minimal

alteration, and no factual support.  (*See* Compl. ¶¶ 14-21.)

The same is true of Andover's state-law claims. The elements of a Chapter 93A claim are (1) a "deceptive practice on the part of the defendant," (2) an "injury or loss suffered" by the plaintiff as a result, and (3) a "causal connection between the defendant's deceptive practice and the [plaintiff's] injury." *Hallal*, 2013 U.S. Dist. LEXIS 39449, at *70. The Complaint devotes three conclusory paragraphs to Andover's Chapter 93A claim, which recite these elements almost verbatim. (*See* Compl. ¶¶ 24-26.) Andover's common law claim meanwhile is supported by one paragraph. (*Id.* ¶ 30.)

On a motion to dismiss, the First Circuit has held that courts should "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Doing so here leaves Andover with no allegations at all, let alone allegations sufficient to state a plausible claim for relief.

### 3.      Andover's Deficient Complaint Undermines Rule 8's Purposes

The plausibility standard under Rule 8 is no mere formality. Rather, as the U.S. Supreme Court has explained, Rule 8 ensures that defendants are not put to the significant burden and expense of discovery by plaintiffs who come to court "armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. The First Circuit has similarly recognized that "the price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which may be costly and burdensome. Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) (emphasis in original); *see also Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 46 (1st Cir. 2012) (recognizing that "one of the main goals of the plausibility standard is the avoidance of unnecessary discovery"). Andover should not be permitted to "unlock the doors of discovery"

and embark on a fishing expedition based on "mere conclusory statements," *Iqbal*, 556 U.S. at 678-79, in hopes of later finding a factual basis for its claims.

Rule 8 also ensures that defendants have notice of the factual basis for a plaintiff's claim so that they can adequately prepare a defense. "At a minimum," this means that defendants are entitled to notice regarding the "facts 'as to who did what to whom, when, where, and why.'" *Ruggers, Inc. v. United States*, 736 F. Supp. 2d 336, 340 (D. Mass. 2010) (dismissing Lanham Act claims on this basis, and quoting *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004)). Here, JJCI cannot even begin to determine why Andover disputes the Products' statements regarding natural rubber latex, what testing (if any) Andover might have done to support its claims, or what other bases (if any) Andover might have for its allegations. Nor can JJCI meaningfully assess the viability of Andover's claims and JJCI's potential defenses without knowing, for example, when Andover knew or should have known about its concerns.[6] *Ruggers*, 736 F. Supp. 2d at 340.

### B. Andover's Complaint Falls Well Short of Rule 9(b)

Because it fails the basic pleading requirements of Rule 8, Andover's Complaint necessarily fails the heightened pleading requirements of Rule 9(b). Rule 9(b) nevertheless is the standard that should be applied to Andover's claims because they sound in fraud. *See Martin*, 2010 U.S. Dist. LEXIS 104923, at *8-*9. Andover's Complaint falls well short.

Under Rule 9(b), Andover "must plead the 'time, place and content'" of the alleged deceptive practice with particularity. *Id*. at *8 (quoting *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980)); *see also Lawton, ex rel. United States v. Takeda Pharm. Co.*,

---

[6] Notably, as evidenced by Andover's previous complaint against Tempo Pharmaceuticals, Andover has been assessing other companies' latex-related labeling since at least 2011.

842 F.3d 125, 130 (1st Cir. 2016) ("Rule 9(b) requires both that the circumstances of the alleged fraud and the claims themselves be alleged with particularity.").  Here, the Complaint pleads nothing with particularity.

Indeed, in Rule 9(b) cases, courts routinely dismiss complaints that are considerably *more* factually detailed than Andover's present allegations.  *See, e.g.*, *Vass v. Blue Diamond Growers*, No. 14-cv-13610 (IT), 2015 U.S. Dist. LEXIS 175317, at *23-*24 (D. Mass. Aug. 11, 2015) (Kelley, M.J.) (recommending dismissal of plaintiff's 93A claim under Rule 9(b) where plaintiff "detailed the language in [defendant's product] label alleged to be unlawful and misleading," and explained in detail "why the language [wa]s purportedly unlawful and misleading," but omitted facts such as when the plaintiff first saw the advertising and in what publications), *adopted by* Order, Dkt. 63, No. 14-cv-13610 (IT) (D. Mass. March 31, 2016) (Talwani, J.); *Wajda v. R.J. Reynolds Tobacco Co*., 103 F. Supp. 2d 29, 33 (D. Mass. 2000) (Rule 9(b) means "[a] plaintiff may not take refuge in generality").

## II.   ANDOVER'S STATE LAW CLAIMS FAIL TO SATISFY THE "PRIMARILY AND SUBSTANTIALLY" REQUIREMENT

Even if they were adequately pled, Andover's claims under Massachusetts law must be dismissed because the conduct that forms the basis of these claims—*i.e.*, JJCI's alleged mislabeling of the Products—did not occur "primarily and substantially" in Massachusetts.

Section 11 of Chapter 93A provides that "[n]o action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth."  Mass. Gen. Laws ch. 93A, § 11 (emphasis added).  Meanwhile, common law claims that are merely derivative of a Chapter 93A violation are held to the same standard or else "merged" with the 93A claim.  *See, e.g.*, *Pickler Int'l v. Leavitt*, 865 F. Supp. 951, 970 (D.

Mass. 1994) (analyzing common law unfair competition claim "under the standards of Mass. Gen. L. ch. 93A," and entering judgment in defendant's favor on both claims for failure to satisfy the "primarily and substantially" requirement), *aff'd*, 94 F.3d 640 (1st Cir. 1996)*; Diomed, Inc. v. Vascular Sols., Inc.*, 417 F. Supp. 2d 137, 146 (D. Mass. 2006) (deeming "derivative" common law unfair competition claim merged with Chapter 93A claim and dismissing on that basis).

Failure to satisfy the "primarily and substantially" requirement is an affirmative defense, and because the issue can be fact-dependent, courts often decline to resolve it at the pleading stage. Here, however, it is abundantly clear from the face of the Complaint that Andover cannot meet the "primarily and substantially" requirement, and dismissal is appropriate. *See Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006) (holding that complaint may be dismissed "under Rule 12(b)(6) on the basis of an affirmative defense" if "the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information" and "those facts suffice to establish the affirmative defense with certitude"); *see also Bliss Valley Props., LLC v. Eliopulos*, 2005 Mass. Super. LEXIS 291 (Mass. Super. Ct. June 2, 2005) (a "pleading concession" may permit dismissal on "primarily and substantially" grounds).

Andover affirmatively alleges that JJCI distributes the "Products throughout the United States in interstate commerce," and that JJCI's alleged "false advertisements and promotions" thus have taken "place throughout the United States." (Compl. ¶¶ 18, 25.) Moreover, insofar as Andover alleges unfair competition with JJCI, the Complaint affirmatively alleges that such competition occurs "at retail stores throughout the United States and the world." (*Id*. ¶ 6.) In light of these concessions, Andover cannot satisfy the "primarily and substantially" requirement. No discovery is needed to establish this fact.

Andover will undoubtedly point out that the Complaint does allege, in one paragraph, that JJCI's conduct is "occurring primarily and substantially within Massachusetts." (*Id.* ¶ 27.) But self-serving and conclusory allegations such as this should be disregarded, *Schatz*, 669 F.3d at 50, especially when, as here, they are flatly contradicted by other allegations in the complaint.

Andover also may argue that, even though the Products are sold nationwide, Andover's purported injuries occur in Massachusetts where its operations are based. Courts routinely reject this argument. *See, e.g.*, *Spring Investor Servs., Inc. v. Carrington Capital Mgmt., LLC*, No. 10-cv-10166 (FDS), 2013 U.S. Dist. LEXIS 45719, at *35 (D. Mass. Apr. 18, 2013) ("[A] place of injury within Massachusetts is not a sufficient basis for finding that conduct occurred 'primarily and substantially' within the Commonwealth."). Indeed, the First Circuit has recognized that in cases alleging false advertising, the primary "impact of the deception" is on consumers—where the products are sold—rather than where the plaintiff's business happens to be located. *See Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 197 (1st Cir. 2012). Accordingly, "[w]here wrongdoing is not focused on Massachusetts but has relevant and substantial impact across the country, the 'primarily' requirement of section 11 cannot be satisfied." *Id.*

## CONCLUSION

Andover's Complaint fails to state a plausible claim for relief and should be dismissed in its entirety. Andover's allegations against JJCI lack any factual support, and the Complaint fails to provide adequate notice or sufficient information for JJCI to prepare a defense. Andover's claims under Massachusetts law fail for the additional reason that the disputed conduct did not occur "primarily and substantially" in this state. Andover's state-law claims, at bare minimum, must be dismissed.

Dated:  June 5, 2017

Respectfully submitted,
JOHNSON & JOHNSON CONSUMER, INC.
by its attorneys,

/s/ Jack I. Siegal
Jack I. Siegal (BBO #669173)
Devine, Millimet & Branch PA
2 Oliver Street, 10th Floor
Boston, MA 02109
t: (617) 778-7500/ f: (617) 936-3641
*jsiegal@devinemillimet.com*

and

Travis J. Tu (*pro hac vice submitted*)
Jason R. Vitullo (*pro hac vice submitted*)
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
t: (212) 336-2000 / f: (212) 336-2222
*tjtu@pbwt.com*
*jvitullo@pbwt.com*

Of counsel:

Rosa A. Ryan, Esq.
Johnson & Johnson

## Certification Pursuant to Local Rule 7.1(a)(2)

I, Jack I. Siegal, counsel for Defendant Johnson & Johnson Consumer, Inc., hereby certify that counsel for Defendant conferred with counsel for Plaintiff Andover Healthcare, Inc. concerning this motion.

/s/ Jack I. Siegal
Jack I. Siegal

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 5th day of June, 2017.

/s/ Jack I. Siegal
Jack I. Siegal